UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM KNAPPENBERGER,

        Petitioner,                      Case Number: 09-CV-10962

v.                                                HON. MARK A. GOLDSMITH

NICK J. LUDWICK,

        Respondent.
_____/

**<u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
GRANTING IN PART AND DENYING IN PART A CERTIFICATE OF
APPEALABILITY, and GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS</u>**

This matter is before the Court on William Knappenberger's petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. Knappenberger, who is presently incarcerated at the Mid-Michigan Correctional Facility in St. Louis, Michigan, challenges his conviction for second-degree criminal sexual conduct on the grounds that the trial court (i) failed to properly swear in the complaining witness, and (ii) improperly constructively amended the information when it instructed the jury on the cognate offense of second-degree criminal sexual conduct. The Court denies habeas relief, grants in part and denies in part a certificate of appealability, and grants Petitioner leave to appeal <u>in forma pauperis</u>.

**I.**

Knappenberger's conviction arises from events that transpired at the home of his work supervisor, Larry W.,[1] in Northville, Michigan. On July 21, 2005, Larry and his wife, Jennifer W.,

---

[1] To protect the identity of the minor victim in this case, the Court refers to the victim and his family members only by their first names and the first initial of their last names.

hosted a party at their home for employees of Larry W.'s company. The party followed a golf outing. Larry and Jennifer W.'s two sons, Nicholas W., age 5, and Nathan W., age 4, attended the party, eating dinner with the guests, and mingling after the dinner. Approximately six weeks after the party, a neighbor, Diane Wagstaff, contacted Jennifer W., to tell her that Nicholas W. had told her something troubling. Jennifer W. questioned the boys and, based upon what they told her, she contacted the police. Based upon interviews with the children, Knappenberger was accused of engaging in a "doggie game" with the children, which culminated in his pulling down their pajama pants and licking them on their bottoms.

Nicholas W., who was six years old at the time of the incident, testified at trial as follows: After the party, he and his brother played football with Knappenberger in their backyard. The boys both wore their pajamas. At one point, they began playing the "doggie game," during which Knappenberger was a dog, and the boys were running around. Nicholas W. fell to the ground. Knappenberger then pulled Nicholas' pants down and licked Nicholas' "butt." Specifically, Nicholas testified that Knappenberger licked inside "the butt crack." He also testified that he observed Knappenberger doing the same thing to Nathan.

Jennifer W. testified that, on the night of the party, her sons mingled with the guests until approximately 9:00 p.m., when she took her sons upstairs for a bath. After getting the boys into the bathtub, she returned to the lower level of the house where the party was being held to speak to her husband. When she began to return upstairs, Knappenberger stopped her and asked where the boys were. Jennifer W. told him they were upstairs taking a bath. Knappenberger indicated that he had something to tell the boys and began walking upstairs. Jennifer W. told him that the boys were taking a bath and he could not go upstairs.

After the boys finished their bath, they and Jennifer W. returned downstairs. All of their guests had left, including Knappenberger, so Jennifer and her husband started cleaning up, while the boys played in the backyard. Knappenberger then returned to their home, saying that he returned to help clean up. Jennifer testified that Knappenberger did very little to assist with the cleanup, instead, playing with the boys. She could hear them playing in the backyard, but could not really see them because it had become dark. At some point, she heard Knappenberger barking, but could not see him or the boys. Jennifer testified that she found the barking unsettling, so she called the boys in to go to bed. She prompted them to say goodbye to Knappenberger and was troubled when they called him "Uncle Bill." As she was walking upstairs to take the boys to their bedrooms, Nicholas told her that Knappenberger had licked their "butts." Jennifer asked him whether he meant Knappenberger had licked their pajamas. Nicholas agreed that was what he had meant. Jennifer testified that she did not pursue the matter with the boys at that point. She testified she regretted that decision immensely and had no logical reason for failing to further question Nicholas.

Knappenberger testified in his own defense. He testified that, as the party was winding down, he drove back in the group van to the nearby hotel where other employees were staying. After arriving at the hotel, Knappenberger drove his vehicle back to the W.'s home because he thought it would be polite to assist with cleanup from the party. When he arrived at the home, Larry and Jennifer W. were cleaning up the patio area of the home. The boys were playing football in the backyard in their pajamas. Knappenberger began putting away folding chairs on the patio, when Nicholas W. threw a football in his direction. Knappenberger interpreted this as an invitation to play football and began playing football with them while the parents continued to clean. He played with them for about ten or fifteen minutes, until their mother called them inside. Knappenberger was told

3

that the W.'s did not require any further help, so he said good-bye and returned to the hotel. Knappenberger denied any sexual contact with the boys. He denied trying to see the boys when they were taking a bath. He also denied playing a game called "doggie" with the boys or barking.

## II.

Knappenberger was charged with two counts of first-degree criminal sexual conduct involving two minor children under the age of thirteen. He was convicted by a jury in Wayne County Circuit Court of one count of second-degree criminal sexual conduct with respect to Nicholas W. and acquitted of the charge related to Nathan W. On April 21, 2006, he was sentenced to seven to fifteen years in prison. Knappenberger filed in the trial court a motion to set aside judgment, for directed verdict/judgment of acquittal, for new trial or correction of sentence. The trial court denied the motion.

Knappenberger filed an appeal of right in the Michigan Court of Appeals. He raised five claims: (i) the conviction for second-degree criminal sexual conduct must be vacated because Knappenberger was not charged with that crime and it is not a necessarily included lesser offense of first-degree criminal sexual conduct; (ii) the trial court erred in failing to assess the six-year-old complainant's competence to testify and failing to properly swear in this witness; (iii) counsel was ineffective in failing to object to the trial court's handling of the minor witness; (iv) due process requires resentencing because the trial court exceeded the guidelines based on disputed facts not proven to a jury beyond a reasonable doubt; and (v) the trial court improperly scored offense variable 10. The Michigan Court of Appeals affirmed Knappenberger's conviction, but remanded for resentencing based upon a factor relied upon by the trial court for its upward departure from the sentencing guidelines. People v. Knappenberger, No. 270572 (Mich. Ct. App. Apr. 24, 2003).

Knappenberger's application for leave to appeal to the Michigan Supreme Court was denied. People v. Knappenberger, 480 Mich. 1189 (Apr. 28, 2008).

The trial court resentenced Knappenberger on September 11, 2008, to four to fifteen years in prison. Knappenberger did not appeal this sentence.

Knappenberger then filed the pending habeas petition. He raises these claims:

> I. The trial court denied Petitioner his rights to due process, a fair trial and confrontation of witnesses where the court failed properly to swear the complainant, or gain an assurance that he (a six-year-old boy) would tell the truth, and where the court's terse inquiry of the witness was wholly inadequate to determine his competency.
>
> II. Petitioner was deprived of his constitutional rights to due process and a fair trial where the trial court constructively amended the information and permitted the jury to convict petitioner of the cognate offense of criminal sexual conduct in the second degree.

### III.

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-21 (citations omitted); see also Williams, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 789 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87 (internal quotation omitted).

     Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme

Court at the time the state court renders its decision. See Williams, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (emphasis in original). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.

### A.

Knappenberger's first claim centers on the trial judge's failure to swear in Nicholas before testifying and whether Nicholas was competent to testify. Before Nicholas – who was six years old at the time of trial – testified, the trial court judge engaged him in the following colloquy:

THE COURT: Do you know what it means to tell the truth, Nicholas?

NICHOLAS: Yes.

THE COURT: And do you know what it means to lie?

NICHOLAS: Yes.

THE COURT: What is better, is it better to lie or is it better to tell the truth?

NICHOLAS: Better to tell the truth.

THE COURT: I think the youth understands the difference between telling the truth and a lie, and that is sufficient for me.

Tr. 4/3/06 at 152.

Nicholas testified without objection from defense counsel. The next day, after Nicholas had been excused as a witness, defense counsel objected to Nicholas' testimony on the ground that Nicholas was not properly sworn in accordance with Michigan Rule of Evidence 603.[2] The court overruled the objection, finding that the colloquy with Nicholas satisfied the spirit of Rule 603 because it impressed upon Nicholas the importance of telling the truth and his duty to do so.

Knappenberger argues that the trial court's alleged failure to properly swear in Nicholas and to assess Nicholas' competence violated his rights to due process, a fair trial, and confrontation of witnesses. In particular, Knappenberger asserts that the trial court failed to elicit from Nicholas a promise to tell the truth and failed to ascertain whether Nicholas understood the consequences of failing to tell the truth. He further argues that Nicholas's trial testimony contradicted itself, evidencing an inability to be a reliable and competent witness. Respondent argues that this claim is procedurally defaulted because defense counsel did not timely object, and that the Michigan Court of Appeals relied upon counsel's failure to timely object in denying relief.

The Court need not determine whether the claim is procedurally defaulted because, regardless, Knappenberger is not entitled to relief. Hudson v. Lafler, 421 F. App'x 619, 623 (6th Cir. 2011) (holding that a federal court can bypass a procedural-default inquiry if the court decides the merits against the petitioner). This is because the Michigan Court of Appeals' adjudication of Knappenberger's claim did not result in a decision that is contrary to, or involved an unreasonable

---

[2] Rule 603 provides: "Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so."

application of, clearly established Federal law. No clearly established Federal law requires that the oath required of all witnesses be administered in any particular way, include any particular language, or even, at a minimum, include a promise to tell the truth as long as the witness understands his duty to tell the truth.

The Sixth Amendment's Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." "The right guaranteed by the Confrontation Clause . . . insures that the witness will give his statements under oath – thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury." Maryland v. Craig, 497 U.S. 836, 845-46 (1990) (internal quotation marks and citation omitted).

> The oath is a necessary ingredient of a right to cross-examination that tests the witness' testimony for consistency against itself and the external world, as well as exposing bias, lack of capacity, credibility problems, or other deficiencies that undermine the value of the testimony to the trier of fact. Likewise, some minimum capacity for recording and relaying truthful information is a precondition to a meaningful oath to tell the truth, which is a necessary element of cross-examination.

Haliym v. Mitchell, 492 F.3d 680, 702-03 (6th Cir. 2007).

The Sixth Circuit considers the minimum capacity for recording and relaying truthful information "satisfied for purposes of the Confrontation Clause if the witness is able to understand the concept of the truth and his duty to present truthful information to the Court." Haliym, 492 F.3d at 703. "There is no constitutionally or statutorily required form of oath." United States v. Ward, 989 F.2d 1015, 1019 (9th Cir. 1992).

In Haliym, the Sixth Circuit considered, on habeas review, the adequacy of an oath administered to a seven-year-old witness. The trial court first administered a traditional oath, asking

9

the child witness whether he swore "to tell the truth, the whole truth, and nothing but the truth, as you shall answer to God?" Id. at 700. The child witness offered no response to the question. A person unidentified in the transcript prompted the child to "say 'I do.'" The child then said, "I do." Id. The prosecutor proceeded to question the child. The prosecutor asked the child whether he understood what it means to swear to God. The child stated that he did not. The petitioner argued that, because the child was prompted to say "I do," and did not understand what it meant to swear to God, his right of confrontation was violated. The Sixth Circuit rejected this argument, citing the prosecution's further questioning of the child, during which the child testified that if you tell lies you will get paddled, that you are supposed to tell the truth all the time, and that he would tell the truth. The Sixth Circuit held that the state court's decision that this questioning showed that the witness understood truth and falsity and appreciated the responsibility he had to be truthful was reasonable. Id. at 703.

Federal Rule of Evidence 603, on which Michigan Rule of Evidence 603 is modeled, provides: "Before testifying, a witness must give an oath or affirmation to testify truthfully. It must be in a form designed to impress that duty on the witness's conscience."[3] The Notes of the Advisory Committee state that "[t]he rule is designed to afford the flexibility required in dealing with . . . children. . . . [N]o special verbal formula is required." In United States v. Thai, 29 F.3d 785 (2d Cir. 1999), the Second Circuit held that the district court satisfied the oath requirement in asking a 13-year-old witness "several questions to establish that [the witness] appreciated the difference between truth and falsehood and that he knew it would be improper to lie in this proceeding." Id.

---

[3] This rule reflects amendments made effective December 1, 2011. The advisory committee notes provide that the amendments are intended to be stylistic only and are not intended to change any result in any ruling on evidence admissibility.

at 812. The Second Circuit stated that "[w]hen children testify, the trial court may fashion an oath or affirmation that is meaningful to the witness." Id. See also Spigarolo v. Meachum, 934 F.2d 19, 24 (2d Cir. 1991) (affirmation sufficient where nine-year-old witness was asked if she understood what it meant to tell the truth and witness knew that "she would get into trouble" if she did not tell the truth).[4]

In this case, the state court reviewed this claim for plain error. A state court's review of a claim for plain error is entitled to deference under the AEDPA. Fleming v. Metrish, 556 F.3d 520, 532 (6th Cir. 2009). In addition, as the Supreme Court made clear in Harrington, deference is owed in this case even though the state court's decision did not specifically reference the Confrontation Clause implications of this claim:

> Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2244(d) applies when a "claim," not a component of one has been adjudicated.

Harrington, 131 S. Ct. at 784.[5]

The Michigan Court of Appeals held that the colloquy between the trial court and Nicholas

---

[4] Additionally, Michigan law does not require trial judges to explicitly elicit a promise from a child witness that he or she will tell the truth. See People v. Stockman, No. 251711, 2005 WL 658041, at *2 (Mich. Ct. App. Mar. 22, 2005) (finding no error where trial court failed to administer an oath or elicit a promise from child witness not to lie because trial court ascertained that child knew the difference between a lie and the truth and understood that it is better to tell the truth); People v. Morrison, No. 229973, 2002 WL 1897953, at *7 (Mich. Ct. App. Aug. 16, 2002) (holding child witness's understanding that she had a duty to tell the truth sufficient to satisfy oath requirement).

[5] Although the Michigan Court of Appeals did not specifically reference the Confrontation Clause, the state court did cite a case, People v. Watson, 629 N.W.2d 411 (2001), that addresses the Confrontation Clause specifically and at some length.

11

was sufficient to impress upon Nicholas his duty to testify truthfully. The trial court, which had the opportunity to observe Nicholas' demeanor and comprehension, credited his understanding of his obligation to testify truthfully. As discussed above, there is no Supreme Court precedent requiring a particular form of oath to satisfy the Confrontation Clause. "'[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by the Court.'" Id. at 786 (quoting Knowles, 556 U.S. at 112). Thus, the state court's conclusion that the colloquy between Nicholas and the trial court judge was sufficient to satisfy the oath requirement is not clearly erroneous, nor is it contrary to, or an unreasonable application of, Supreme Court precedent.

In addition, Knappenberger argues that the trial court erred in failing properly to evaluate Nicholas's competence to testify prior to his testifying. He argues that, while testifying, Nicholas continually contradicted himself, evidencing an inability to function as a reliable or competent witness. A witness is competent "if the witness is able to understand the concept of the truth and his duty to present truthful information to the court." Haliym, 492 F.3d at 703.

The Michigan Court of Appeals held that the record indicated Nicholas' competence to testify, and that any inconsistency in Nicholas' testimony affected his credibility and not his competence. This holding does not violate clearly established federal law. At the preliminary examination, Nicholas was questioned at length about the difference between a lie and the truth. He stated that it was better to tell the truth and that lying would result in getting in trouble, for example, going to the principal's office. Additionally, he exhibited a strong understanding about what it would mean to guess at an answer and an understanding that he should not do so during his testimony. In addition, when defense counsel cross-examined Nicholas, he was responsive to the

cross-examination. The record shows that Nicholas understood the concept of the truth and his duty to testify truthfully. Accordingly, the Court rejects Knappenberger's claim that he is entitled to habeas relief based on Nicholas' purported incompetence.

**B.**

Knappenberger next claims that his rights to due process and a fair trial were violated when the trial court instructed the jury on the cognate offense of second-degree criminal sexual conduct. Knappenberger argues that this instruction violated Mich. Comp. Laws § 768.32 because it constituted a constructive amendment to the information, which charged only two counts of first-degree criminal sexual conduct. He further argues that the constructive amendment violated the Due Process Clause because he was not provided with notice that he would need to defend against a charge of second-degree criminal sexual conduct, a cognate offense, rather than a necessarily included lesser offense of first-degree criminal sexual conduct. The Court denies this claim for three reasons. First, Knappenberger invited the error of which he now complains. Second, habeas relief is not available for alleged violations of state law. Third, the second-degree criminal sexual conduct charge could not have unfairly surprised Knappenberger.

First, defense counsel requested a second-degree criminal sexual conduct instruction. "The doctrine of 'invited error' is a branch of the doctrine of waiver by which courts prevent a party from inducing an erroneous ruling and later seeking to profit from the legal consequences of having the ruling set aside." Harvis v. Roadway Express, Inc., 923 F.2d 59, 61 (6th Cir. 1991). "When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error." Fields v. Bagley, 275 F.3d 478, 486 (6th Cir. 2001). The doctrine of invited error dooms this claim.

13

Second, even if the doctrine of invited error does not bar relief on this claim, the claim fails on the merits. The bulk of Knappenberger's argument in his habeas petition focuses on the alleged violation of Mich. Comp. Laws § 767.76. "A federal court may not issue the writ on the basis of a perceived error of state law." Pulley v. Harris, 465 U.S. 37, 41 (1984). Federal courts performing habeas review do not act as "super-appellate state courts." See Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002). The United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal habeas proceedings. Mullaney v. Wilbur, 421 U.S. 684, 691 (1975). Thus, Knappenberger's allegations of state law violations are not cognizable on federal habeas review.

Finally, Petitioner's claim of unfair surprise is meritless. The Sixth Amendment guarantees a criminal defendant a right to be clearly informed of the nature and cause of the charges against him in order that he may prepare a defense. See Cole v. Arkansas, 333 U.S. 196, 201 (1948). "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." Koontz v. Glossa, 731 F.2d 365, 369 (6th Cir. 1984). Whether a defendant charged with the greater offense has notice of the cognate offense depends on whether, under the circumstances, the defendant had reasonable notice of the charges and a fair hearing in open court. Paterno v. Lyons, 334 U.S. 314, 320 (1948). A complaint or indictment "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." Mira v. Marshall, 806 F.2d 636, 639 (6th Cir. 1986). In this case, counsel's request for the second-degree murder charge, by itself, shows that Knappenberger was not unfairly surprised by the charge. Habeas relief is denied on this claim.

14

**V.**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists would debate its conclusion on Petitioner's oath claim but not on his amendment-of-the-information claim. Thus, the Court grants in part and denies in part a COA. Further, Petitioner is granted leave to appeal in forma pauperis.

**VI.**

For the foregoing reasons, it is ORDERED as follows:

1. The petition for a writ of habeas corpus is denied.

2. A COA is granted as to the oath claim, but denied as to the amendment-of-the-information claim.

3. Petitioner is granted leave to appeal in forma pauperis.

Dated: March 2, 2012               s/Mark A. Goldsmith
       Flint, Michigan             MARK A. GOLDSMITH
                                   United States District Judge

**CERTIFICATE OF SERVICE**

  The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 2, 2012.

                s/Deborah J. Goltz
                DEBORAH J. GOLTZ
                Case Manager